THE MAYOR AND COMMON COUNCIL OF SEA ISLE CITY v. THE BOARD OF ASSESSORS OF THE COUNTY OF CAPE MAY.

1. The board of assessors, in making the apportionment of state and county taxes, being a special statutory tribunal, its action is valid only when its functions have been performed in the manner, and in compliance with the forms prescribed by the statute which conferred the jurisdiction.

2. By the thirteenth section of the general tax law, as amended by the act of 1883 (*Pamph. L.*, p. 192), the duplicates of the several assessors are presumed to contain correct valuations of all taxable property in each township or ward. The board of assessors is not warranted in reducing the valuations on any duplicate; nor has it power to increase the valuations contained in any duplicate, unless upon a careful, particular and thorough comparison of the several duplicates, and then only by increasing the valuation by such a percentage as shall appear to be just and proper, and warranted by such comparison.

On *certiorari*. In matter of taxes.

Argued at June Term, 1887, before Justices DEPUE, MAGIE and KNAPP.

For the plaintiff in *certiorari*, *Leaming & Black*.

*Contra*, *John B. Huffman.*

The opinion of the court was delivered by

Depue, J.   The board of assessors of the county of Cape May, convened for the purpose of raising the valuations of taxable property, real and personal, of the several townships and municipalities in the county for the year 1886, and for the apportionment of the state and county taxes thereon, increased the valuations of taxable property in Sea Isle City. The valuation appearing on the duplicate of the assessor of the city was $232,158.   It was increased by the board to $300,000.   This writ was sued out to review the regularity and legality of the action of the board in making such increase.

The twelfth section of the General Tax act of April 11th, 1866 (*Rev., p.* 1155), makes it the duty of the assessors of the several townships and wards to meet annually for the purpose of apportioning the state and county taxes.   Each assessor is required to attend at such meeting, and to produce his duplicate of the value of real and personal estate to be by him assessed, with the amount of each column correctly added, and the total of all the columns correctly added together, and also to produce an affidavit that he has diligently inquired respecting the nature and value of real and personal estate liable to taxation in his township or ward, and that he has, to the best of his ability, and without favor or partiality, valued all the said property liable to taxation in his township or ward at its full and fair value, at such price as, in his judgment, said property would sell for at a fair and *bona fide* sale, by private contract, on the day prescribed by law for commencing the assessments, and that he has deducted from such value only such balance of debts as is prescribed by law. The section also contains provisions for sending the duplicates and affidavit to the board in case the assessor does not attend, and for an estimation of values, in case the assessor does not produce or send his duplicate and affidavit.

The assessor of Sea Isle City was present at the meeting of

the board in question before its business was concluded, and produced his duplicate and affidavit in compliance with section 12. The board increased the valuation appearing on the duplicate as above mentioned.

The power and jurisdiction of the board to take such official action were granted by section 13 as amended, and re-enacted as amended by the act of March 23d, 1883. *Pamph. L., p.* 192. The board of assessors being a special statutory tribunal, its action is valid only when its functions have been performed in the manner, and in compliance with forms prescribed by the statute which conferred the jurisdiction. 2 *Stew. Dig.* 1041, 1053, 1054; 3 *Id.* 572.

The act of 1883 provides that the board of assessors, when met, shall compute and ascertain the whole value of real and personal estate after the deduction of debts, to be taxed according to the value thereof contained in the duplicates of the several assessors, or estimated as provided by section 12 (*i. e.,* in case the assessor does not produce or send his duplicate and affidavit), and shall fix and adjust the proportion or quota of tax to be levied and collected in each township or ward in proportion to said value, with proviso that if it shall appear to the assessors, from a careful, particular and thorough comparison of the said respective duplicates, that the value of the property contained in any duplicate is relatively less than the value of other property in the county, they may, for the purpose of fixing and adjusting the said proportion or quota, and for that purpose only, add thereto such percentage as shall appear to them just and proper, and warranted by said comparison, but not otherwise.

By this act the duplicates of the several assessors are presumed to contain correct valuations of all taxable property in each township or ward.

The board is not warranted in reducing the valuations appearing on any duplicate, nor has it power to increase the valuations contained in any duplicate, unless upon a careful, particular and thorough comparison of the respective duplicates, and then only by increasing the valuation by such percentage

as shall appear to be just and proper, and warranted by such comparison.

The duplicates of all the assessors were produced before the board, but no examination of any one of them was made by the board. The assessor of Sea Isle City says he demanded the examination of his duplicate, but the board refused, and it is probable that the amount of his valuations, as shown by his duplicate, was made known to the board during the discussion, for otherwise the board could have no basis on which the increase in valuation was made. The manner in which the business was transacted appears by the deposition of the chairman of the board. He testified that the duplicates lay upon the table, free for the examination of any assessor who wished to investigate them; that the duplicates were not actually examined, but the amounts handed in by the assessors were taken as the valuations. Each of the assessors of the other townships testified that the valuations in his township were made from the amount he handed in, and in each case, except in that of West Cape May, the amount handed in was less than the valuations appearing on the duplicate. The assessor of Middle township, whose duplicate showed valuations to the amount of $638,000, handed in $530,000 as the amount. He says that he handed in an amount less than the amount of his duplicate for the reason that he found that his assessment was relatively higher than other assessments, as shown by the abstract, and that he did it in order to have his assessment on a level with others.

The result of this method of transacting business was this:

The amount handed in by the assessor of Holly Beach City, as the amount of his duplicate, was..... ......... ....... ......... .........   $150,000 00
The true amount of his duplicate.was...........   152,375 00

Amount less than duplicate...... ......... ......   $2,375 00

The amount handed in by the assessor of Lower township, as the amount of his duplicate, was....... .... ...... .................. .........   $270,000 00

The true amount of the duplicate of Lower
township was........................ ...... ...... .........  $273,225 00

Amount less than duplicate ..... ......... ......  $3,225 00

The amount handed in by the assessor of
Cape May Point, as the amount of his dupli-
plicate, was......... ...... ... ..... ................  $140,000 00

The true amount of the duplicate of Cape May
Point was..... ......... ...... ...... ......... ......  260,720 00

Amount less than duplicate......... ........ ......  $120,720 00

The amount handed in by the assessor of Mid-
dle township was......... ......... ...... .........  $530,000 00

The true amount of the duplicate of Middle
township was ......... ......... ...... ........  638,000 00

Amount less than duplicate..... ...... .........  $108,000 00

The amount handed in by the assessor of
Dennis township was........... ......... .........  $421,000 00

The true amount of the duplicate of Dennis
township was........ ......... ...... ...... .........  423,212 00

Amount less than duplicate......... ......... ...  $2,212 00

The amount handed in by the assessor of West
Cape May was the true amount of his dupli-
cate ......... ...... ......... ...... ...... ...... ........  $128,000 00

The amount handed in by the assessor of
Upper township was...... ...... ...... ......  524,000 00

The true amount of the duplicate of Upper
township was ......... ......... ......... .........  529,730 00

Amount less than duplicate..... ...... .........  $5,730 00

The amount handed in by the assessor of Cape
May city was... ......... ...... ...... ...... .........$1,000,000 00

The true amount of the duplicate of Cape May
city was......... ...... ......... ......... .........  1,767,925 00

Amount less than duplicate......... ... .........  $767,925 00

Haynes v. Cape May.

|  |  |  |
|---|---|---|
| The amount of the duplicate of Sea Isle City was.. ......... ..,...... ...................... ...... ...... | $232,158 | 00 |
| The amount fixed by the board as the valuation of Sea Isle city was....... ......... .:........ | 300,000 | 00 |
| Amount more than duplicate...... ...... ........ | $67,842 | 00 |

These proceedings were in flagrant violation of the statute, which is plain and explicit in its language. The board has no power to reduce the valuations shown by the duplicate of any assessor. Nor had it power to increase any such valuation, except upon a careful, particular, and thorough comparison of the duplicates, and then only by adding a percentage graduated by such comparison.

The board reduced the valuations of the other taxable districts $1,007,812 below the sum appearing on the respective duplicates. It increased the valuation of Sea Isle City $67,842 without observing the requirements of the law. In both respects the action of the board was illegal.

The apportionment of state and county tax made to Sea Isle City on these illegal proceedings should be set aside, and the amount thereof reduced to such a sum as would have been apportioned to the city if the whole amount of the state and county tax of the county had been apportioned to each taxable district upon the amount of taxable valuations appearing upon the respective duplicates.

The reversal should be with costs.